568 So.2d 18 (1990)
Harold Gene LUCAS, Appellant,
v.
STATE of Florida, Appellee.
No. 70653.
Supreme Court of Florida.
September 20, 1990.
*20 James Marion Moorman, Public Defender, and Robert F. Moeller, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Charles Corces, Jr. and Joseph R. Bryant, Asst. Attys. Gen., Tampa, for appellee.
PER CURIAM.
Lucas appeals the death sentence imposed on him at resentencing. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We again vacate his death sentence and remand to the trial court for resentencing.
This is the fourth time Lucas has been before this Court. In 1979 we affirmed his conviction of first-degree murder for killing his former girlfriend and his convictions of attempted first-degree murder for shooting two of her friends. Lucas v. State, 376 So.2d 1149 (Fla. 1979).[1] Because the trial court relied on an improper aggravating factor, however, we vacated Lucas' death sentence and remanded for resentencing. After the court again sentenced Lucas to death, we again vacated the sentence and remanded because the court had not exercised reasoned judgment in weighing aggravating and mitigating circumstances on the first remand. Lucas v. State, 417 So.2d 250 (Fla. 1982). On remand the court again sentenced Lucas to death. In appealing that sentence Lucas argued that he should have received a new sentencing proceeding so that he could present additional evidence and testimony because his original trial judge did not believe that nonstatutory mitigating evidence could be introduced and considered. We agreed and, yet again, vacated the death sentence and sent the case back for a new sentencing proceeding before a jury. Lucas v. State, 490 So.2d 943 (Fla. 1986). Lucas' second jury, as did his first, recommended that he receive the death penalty, which the trial court imposed, thereby prompting the instant appeal.
Lucas raises numerous issues[2] and first argues that certain prosecutorial comments during voir dire and closing argument tainted the jury and misled it in considering the mitigating evidence. During voir dire, the prosecutor asked prospective jurors whether they believed an intoxicated person should be held accountable. We do not see how these questions could have misled the jury into believing that alcohol and drug use could not be considered in mitigation. The court properly instructed the jury on the consideration of mitigating evidence, and we find no error here.
During closing argument, the prosecutor urged the jury to reject the mitigating factor of no significant prior history of criminal activity because Lucas had been convicted of two counts of attempted first-degree murder. In Scull v. State, 533 So.2d 1137, *21 1143 (Fla. 1988), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989), we stated that "we do not believe that a `history' of prior criminal conduct can be established by contemporaneous crimes" and receded from our holding in Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981), to the contrary. While such an argument should not be made now, it could be made at the time of Lucas' resentencing. Lucas did not object to the argument, however, and, because we do not find fundamental error to be involved, this issue has not been preserved for appeal.
In arguing against the applicability of the mitigating factor of impaired capacity to appreciate the criminality of one's conduct the prosecutor said that Lucas knew right from wrong. Defense counsel objected that the standard for insanity did not apply, but the court overruled the objection, finding the remark to be a fair comment on the evidence. On direct examination the defense's psychiatrist testified that Lucas "probably knew the difference between right and wrong." On cross-examination this witness testified that Lucas suffered from no serious mental illnesses and reiterated that Lucas knew right from wrong at the time of the murder in spite of the drugs and alcohol he had ingested. We agree with the trial court that the prosecutor's remark constituted a fair comment and disagree with Lucas' claim that the remark misled the jury.
The two victims who survived Lucas' attack testified at the resentencing proceeding. Lucas now claims that their recounting the episode unduly prejudiced him and misled and confused the jury because their physical and mental suffering became a feature of the trial. We disagree. Testimony by the victims, or others, about prior crimes is admissible if the defendant is given the opportunity to confront the witness. Rhodes v. State, 547 So.2d 1201 (Fla. 1989); Mann v. State, 453 So.2d 784 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985); Elledge v. State, 346 So.2d 998 (Fla. 1977). Moreover, "[b]ecause a jury cannot be expected to make a decision in a vacuum, it must be made aware of the underlying facts." Chandler v. State, 534 So.2d 701, 703 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 2089, 104 L.Ed.2d 652 (1989). Defense counsel cross-examined these witnesses, and we do not find that their testimony unduly prejudiced Lucas. Additionally, their testimony was not the type of victim impact evidence prohibited by Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).
Subsection 921.141(1), Florida Statutes (1985), permits the introduction of hearsay if the opposing party is given the opportunity to rebut it. Lucas now claims that the state should not be allowed to present hearsay evidence in penalty proceedings. We have rejected similar claims before, Chandler; King v. State, 514 So.2d 354 (Fla. 1987), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988), and do so again here.
The instant claim is based on the state's eliciting from one of its witnesses the victim's telling him of threats made toward her by Lucas. As the state points out, however, the record discloses that on direct examination it questioned the witness only about a threat to the victim that Lucas made to that witness. On cross-examination the defense questioned the witness, over the state's objection, about threats against Lucas made by the victim. Only on redirect examination did the state ask about the victim's telling the witness about threats made against her. The defense opened the door to this line of questioning, and we find no error here.
As another part of this issue, Lucas claims that the trial court erred in not allowing him to introduce hearsay. Much of Lucas' mitigating evidence dealt with his drug and alcohol use the day of the killing. On the day in question he purchased drugs from a woman from Miami who was visiting his neighbor. The neighbor testified for the defense and admitted that she did *22 not know if the drug was THC or PCP.[3] The court sustained the state's objection to the defense's asking the neighbor what the Miami woman told her the drug was.
The defense did not proffer what the witness would have said if allowed to answer the question. A proffer is necessary to preserve a claim such as this because an appellate court will not otherwise speculate about the admissibility of such evidence. Salamy v. State, 509 So.2d 1201 (Fla. 1st DCA 1987); Phillips v. State, 351 So.2d 738 (Fla. 3d DCA 1977), cert. denied, 361 So.2d 834 (Fla. 1978). We therefore find this claim has not been preserved for review.[4]
Over a defense objection the court allowed the victim's mother to testify that, a few days before the murder, Lucas had been arrested for trespass after warning on their home and stated that Lucas "had broken in [in] some way or another." Two weeks before trial the state notified the defense that it intended to introduce this evidence. Lucas now claims that the notice did not meet the requirements of subsection 90.404(2)(b)(1), Florida Statutes (1985),[5] and that the witness' accusing him of burglary surprised and unduly prejudiced him.
Evidence of other crimes a defendant has committed is generally inadmissible because it might convince the jury that, because "he committed the other crime or crimes, he probably committed the crime charged." Craig v. State, 510 So.2d 857, 863 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988). The admission of such evidence is highly regulated because
[a] verdict of guilt on a criminal charge should be based on evidence pertaining specifically to the crime. The jury's attention should always be focused on guilt or innocence of the crime charged and should not be diverted by information about unrelated matters.
Id. We agree with the state that the reasons for being so strict with evidence of other crimes, i.e., protecting the innocent from being convicted by association, are less imperative where, as here, the defendant's guilt has already been established. Moreover, a lay person, uneducated in legal definitions, whose locked home has been entered by an uninvited person might well say that the home had been broken into. The testimony related to Lucas' character and record and to the circumstances of the offense. Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). No reversible error occurred regarding this issue.[6]
In cross-examining one of the attempted murder victims the defense asked about the murder victim's drug use. When the state objected, the defense stated: "We feel it's proper impeachment to show that perhaps she was in fact using drugs." The court sustained the objection. Lucas now claims that the victim's credibility was at issue regarding her telling a witness about Lucas' threats against her. We, as did the trial court, do not find the victim's drug use relevant to Lucas' character and record or the circumstances of the crime.
*23 Lucas also challenges the trial court's findings of fact in support of the death penalty, claiming that: 1) the order does not reflect a reasoned weighing of the aggravating factors and mitigating circumstances; 2) the court erred in finding certain aggravating factors and in not finding mitigating factors; and 3) death is disproportionate in this case. On the facts of this case we do not agree that death is necessarily disproportionate for this killing. We cannot say, however, whether the court properly found it to be appropriate.
The court definitely found in aggravation that Lucas had previously been convicted of two violent felonies and, apparently, found the killing to have been heinous, atrocious, or cruel, although this second finding is not as clear as the first. The court may have found the murder to have been committed in a cold, calculated, and premeditated manner with no pretense of moral or legal justification, but we cannot say for certain whether the court found or rejected this circumstance.[7] The court considered four specific statutory mitigating factors and specifically found that Lucas' age did not "establish a reasonable mitigating factor." The court may have found extreme emotional disturbance and impaired capacity, but we are unable to tell that for sure. After listing it, the court makes no further mention of no significant prior criminal history.[8] Finally, the order does not mention the nonstatutory mitigating evidence Lucas now advances, i.e., his sorrow and remorse, his generally nonviolent character, his becoming calmer since being incarcerated, his holding gainful employment, other people's trusting him with their money and children, and his drug and alcohol use.
We have previously held that a trial court need not expressly address each nonstatutory mitigating factor in rejecting them, Mason v. State, 438 So.2d 374 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984), and "[t]hat the court's findings of fact did not specifically address appellant's evidence and arguments does not mean they were not considered." Brown v. State, 473 So.2d 1260, 1268 (Fla.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985). More recently, however, to assist trial courts in setting out their findings, we have formulated guidelines for findings in regard to mitigating evidence in Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), and Campbell v. State, no. 72,622 (Fla. June 14, 1990). We have even noted broad categories of nonstatutory mitigating evidence which may be valid. Campbell, slip op. at 9 n. 6. However, "[m]itigating circumstances must, in some way, ameliorate the enormity of the defendant's guilt." Eutzy v. State, 458 So.2d 755, 759 (Fla. 1984), cert. denied, 471 U.S. 1045, 105 S.Ct. 2062, 85 L.Ed.2d 336 (1985). We, as a reviewing court, not a fact-finding court, cannot make hard-and-fast rules about what must be found in mitigation in any particular case. Hudson v. State, 538 So.2d 829 (Fla.), cert. denied, ___ U.S. ___, 110 S.Ct. 212, 107 L.Ed.2d 165 (1989); Brown v. Wainwright, 392 So.2d 1327 (Fla.), cert. denied, 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981). Because each case is unique, determining what evidence might mitigate each individual defendant's sentence must remain within the trial court's discretion. King v. Dugger, 555 So.2d 355 (Fla. 1990); Scull v. State, 533 So.2d 1137 (Fla. 1988), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989); Stano v. State, 473 So.2d 1282 (Fla. 1985), cert. denied, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986).
As the state points out, Lucas did not point out to the trial court all of the *24 nonstatutory mitigating circumstances he now faults the court for not considering. Because nonstatutory mitigating evidence is so individualized, the defense must share the burden and identify for the court the specific nonstatutory mitigating circumstances it is attempting to establish. This is not too much to ask if the court is to perform the meaningful analysis required in considering all the applicable aggravating and mitigating circumstances.
As we have stated before:
There is no prescribed form for the order containing the findings of mitigating and aggravating circumstances. The primary purpose of requiring these findings to be in writing is to provide an opportunity for meaningful review by this Court so that it may be determined that the trial judge viewed the issue of life or death within the framework of the rules provided by statute. It must appear that the sentence imposed was the result of reasoned judgment.
Holmes v. State, 374 So.2d 944, 950 (Fla. 1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1845, 64 L.Ed.2d 267 (1980). A trial court's findings, however, must be of "unmistakable clarity." Mann v. State, 420 So.2d 578, 581 (Fla. 1982). The instant findings do not meet this requirement. Therefore, we vacate Lucas' death sentence and remand to the trial court for reconsideration and rewriting of the findings of fact. Lucas should inform the court of the specific nonstatutory mitigating circumstances he wants the court to consider, and the court may permit both sides to present argument regarding those circumstances. There is no need to empanel a new jury.
It is so ordered.
OVERTON, McDONALD, EHRLICH and GRIMES, JJ., concur.
BARKETT and KOGAN, JJ., concur in the result only.
SHAW, C.J., concurs with an opinion, in which BARKETT and KOGAN, JJ., concur.
SHAW, Chief Justice, concurring.
I write to point out that this Court has expressly set out definitive guidelines for dealing with statutory and nonstatutory mitigating circumstances in Campbell v. State, No. 72,622 (Fla. June 14, 1990). In order for this Court to engage in meaningful appellate review, these guidelines should be followed in all capital-sentencing orders.
BARKETT and KOGAN, JJ., concur.
NOTES
[1] This 1979 opinion sets out the facts of this case.
[2] These include several issues which merit little discussion. The court did not err in taking judicial notice of Lucas' prior convictions of attempted first-degree murder. Those convictions were in that court's records and not subject to any reasonable dispute because they had been established beyond any reasonable doubt. Allowing jurors to take notes is within the trial court's discretion. Kelley v. State, 486 So.2d 578 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). We reject Lucas' contention that Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which prohibits racially motivated peremptory challenges of black prospective jurors, should be extended to peremptory challenges of prospective jurors based on their opinions regarding the death penalty. The court did not err in refusing to allow Lucas to present testimony that he would not be paroled if sentenced to life imprisonment. See King v. Dugger, 555 So.2d 355, 359 (Fla. 1990).
[3] An expert later testified that PCP is a more powerful drug than THC.
[4] Even assuming both that the court should have allowed the witness to answer and that she would have said the Miami woman told her the drug was PCP, that testimony would have been merely cumulative to the testimony of another defense witness that he thought the drug was PCP.
[5] This subsection reads as follows:

(b) 1. When the state in a criminal action intends to offer evidence of other criminal offenses under paragraph (a), no fewer than 10 days before trial, the state shall furnish to the accused a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information. No notice is required for evidence of offenses used for impeachment or on rebuttal.
[6] One of the statutory mitigating circumstances is: "The defendant has no significant history of prior criminal activity." § 921.141(6)(a), Fla. Stat. (1985). Arrests and other evidence of criminal activity, without convictions, may be "significant" and may rebut this mitigator. Walton v. State, 547 So.2d 622 (Fla. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 759, 107 L.Ed.2d 775 (1990); Washington v. State, 362 So.2d 658 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979).
[7] If the court found cold, calculated, and premeditated, we cannot agree that this killing, although premeditated, rises to the level needed to support such a finding.
[8] No significant prior criminal history had been found in Lucas' prior sentencings, but such a finding does not create a vested entitlement because resentencings are entirely new proceedings, and trial courts are not obligated to find any certain mitigating factors. King v. Dugger, 555 So.2d 355 (Fla. 1990).