**Robert L. PATTON, Plaintiff,**

v.

**Richard L. DUGGER, etc., Defendant.**

**No. 87–811–CIV–SPELLMAN.**

United States District Court,
S.D. Florida,
Miami Division.

Feb. 4, 1988.

William L. Richey, Miami, Fla., for Patton.

Ralph Barreira, Asst. Atty. Gen., Dept. of Legal Affairs, Miami, Fla., for Dugger.

## MEMORANDUM OPINION AND ORDER ADOPTING AND AFFIRMING MAGISTRATE'S RECOMMENDATION

SPELLMAN, District Judge.

 THIS CAUSE comes before the Court upon Magistrate William C. Turnoff's recommendation regarding Robert L. Patton's petition for Writ of Habeas Corpus pursuant to 28 U.S.C. section 2254. After a *de novo* review of the recommendation, the objections thereto, and the record herein, it appears that the Magistrate was correct in his decision.[1] Accordingly, it is hereby

ORDERED AND ADJUDGED that this Court ADOPTS AND AFFIRMS said recommendation *in toto* and the instant petition for Writ of Habeas Corpus is DENIED and DISMISSED WITH PREJUDICE.[2]

## APPENDIX

### REPORT AND RECOMMENDATION

WILLIAM C. TURNOFF, United States Magistrate.

Robert L. Patton,[1] appearing through counsel, has filed a petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

This matter was referred to the undersigned by the Honorable Eugene P. Spellman, United States District Judge, for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).

### PROCEDURAL HISTORY

On March 4, 1982, in Dade County Circuit Court, petitioner was convicted of First Degree Murder and sentenced to death. Petitioner was also convicted of Armed Robbery, Grand Theft, Auto Theft, and was found to have violated his probation. He was sentenced to 110 years for the Armed Robbery conviction, 5 years for Grand Theft, and 5 years for Auto Theft.

All these sentences were to be served consecutively.

The facts reveal that on September 2, 1981, the victim, a Miami Police Officer, attempted to stop petitioner for a traffic violation. Petitioner abandoned his car, which was subsequently determined to have been stolen, and fled on foot. The officer pursued petitioner into an alley. Petitioner shot the officer twice, killing him instantly. Immediately thereafter, petitioner stole a car at gunpoint and fled the area.

Subsequent to the convictions, petitioner filed a direct appeal to the Florida Supreme Court. *Patten v. State*, 467 So.2d 975 (Fla. 1985), *cert. denied*, 474 U.S. 876, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985). The Florida Supreme Court affirmed all of the convictions with the exception of the death sentence. The Court vacated the death sentence and remanded the matter

> for a new sentencing proceeding before a jury because the trial judge erroneously instructed the jury that it should try to reach a majority verdict after the jury had advised the court it was deadlocked concerning its sentencing recommendation for the first-degree murder conviction.

*Patten*, 467 So.2d at 975.

In so doing, petitioner avers that the Court failed to address the basic relief he requested, a remand for a new sentencing premised on the fact that the jury had made a life recommendation.

Subsequently, petitioner filed two motions in the trial court to accept the prior deadlock as a life sentence recommendation. Petitioner indicates that these motions were denied on February 18, 1986, and again on June 9, 1986. Next, petitioner's Suggestion for Writ of Prohibition to the Florida Supreme Court was denied on July 14, 1987.

---

**1.** This Court specifically adopts as its opinion the Report and Recommendation of William C. Turnoff, United States Magistrate, and does hereby attach it as an Appendix to this opinion.

**2.** Petitioner's request for oral argument is hereby DENIED.

**1.** In the instant petition for Writ of Habeas Corpus, petitioner spells his name "Patton." It is noted that in prior state court matters, petitioner's name is spelled "Patten."

In the interim, petitioner filed the instant matter on April 28, 1987. Herein, petitioner contends that to subject him to a sentencing trial, *ab initio,* would violate the Double Jeopardy Clause of the United States Constitution.

## ABSTENTION

Initially, in his response, respondent contends that this Court should decline to review the substance of petitioner's claim inasmuch as the trial court's sentencing retrial is currently pending. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger,* the Court recognized the longstanding policy against federal court interference with state court proceedings, absent a showing of irreparable injury. *Id.* at 43–44, 91 S.Ct. at 750. As a matter of comity, federal courts are wary of enjoining state criminal proceedings under the doctrine of abstention established in *Younger, supra.*

■ Double jeopardy claims, however, are an exception to the abstention doctrine. *Showery v. Samaniego,* 814 F.2d 200, 201 n. 5 (5th Cir.1987), citing *Davis v. Herring,* 800 F.2d 513, 516 (5th Cir.1986). In the present context, the right to be free from double jeopardy includes the right to be free from any subsequent sentencing that may violate double jeopardy. It must be recognized that this right cannot be fully vindicated upon any subsequent collateral attack. The nature of the Double Jeopardy Clause protects against the burdens of the subsequent sentencing retrial itself. *Abney v. U.S.,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Showery, supra; Davis, supra.*

Thus, federal courts are empowered to enjoin state criminal proceedings that constitute double jeopardy. Accordingly, this Court declines to abstain from a substantive review of petitioner's claim.

## ANALYSIS

Petitioner asserts that the Double Jeopardy Clause is violated if he is compelled to undergo a second sentencing proceeding before a new jury.

During the initial sentencing deliberations, the jury advised the trial judge that they were deadlocked six-to-six with regard to a recommended sentence. The judge then instructed the jury:

> If you cannot agree on a majority to either life or death, without trying to pressure you, by talking it over one more time and agreeing one way or another, and I'm not suggesting any result, but if after trying one more time you can't agree and it's still six/six, I will instruct you to go ahead and sign that verdict form that includes life imprisonment without parole for 25 years.

*Patten,* 467 So.2d at 977.

Subsequently, after continued deliberation, the jury returned with a seven-to-five recommendation for death.

■ The central premise of petitioner's position is that when the jury advised the judge that they were deadlocked, this represented a recommendation of life imprisonment. Based on this premise, petitioner concludes that the new sentencing should begin with that life recommendation, rather than with the empaneling of a new jury to begin the process anew. Petitioner maintains that since the jury rejected the death penalty, double jeopardy deprives the State of a second opportunity to convince another jury otherwise.

Previously, in *Rose v. State,* 425 So.2d 521 (Fla.1982), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983), the Florida Supreme Court was faced with a similar set of circumstances. Therein, the trial judge gave an "Allen charge" [2] after the jury advised the trial court that it was deadlocked during penalty deliberations. The Court stated:

> At that point, the trial judge should have advised the jury that it was not necessary to have a majority reach a sentencing recommendation because, if seven ju-

---

**2.** The "Allen charge," deriving its name from *Allen v. U.S.,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), refers to supplemental instructions given to deadlocked juries urging them to forego their differences and come to a decision.

rors do not vote to recommend death, then the recommendation is life imprisonment. There was no reason to give the "Allen charge" during the penalty phase of the trial. We therefore vacate the death sentence and *hold that defendant is entitled to a new sentencing proceeding before a jury.*

*Rose,* 425 So.2d at 525.

Significantly, although the Court held that the supplemental instruction in response to the deadlock was inappropriate, the Court failed to hold that the deadlock constituted a recommendation for life. Consistently, in the instant matter, the Florida Supreme Court reasoned:

> We find no logical distinction between the instant case and our *Rose* decision and hold that the case must be remanded for a new sentencing hearing. We do not find it appropriate to treat the jury recommendation as a life recommendation and the trial judge's sentence as a jury override, as urged by the state. *There was no life recommendation in this case* and the trial court did not, therefore, consider this significant factor in his sentencing decision. To now treat the jury recommendation as a life recommendation and review appellant's sentence without the benefit of the trial judge's consideration of the *Tedder* doctrine [3] would require this Court to make an assumption as to what sentence the trial judge would have imposed if the jury had actually returned a life recommendation. We decline to do so.

*Patten,* 467 So.2d at 980 (emphasis added).

Petitioner argues that when the trial judge received the jury's note indicating a six-to-six deadlock, he should have recalled the jury and applied the *Tedder* standard to the life recommendation.

Although petitioner makes an accurate statement of the law, in the instant matter, a condition precedent to the application of the *Tedder* standard is absent. There was

no life recommendation. The absence of a life recommendation distinguishes this case from the case petitioner principally relies upon. In *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the United States Supreme Court held that the Double Jeopardy Clause barred the state from subjecting a *defendant who had received a life sentence* in his first trial to the ordeal of a second sentencing proceeding after his conviction had been reversed.

It is the conclusion of this Court that the remand for a new sentencing proceeding, *ab initio,* does not violate double jeopardy. Accordingly, habeas relief is not warranted.

### RECOMMENDATION

Based on the foregoing, it is hereby RECOMMENDED that the instant petition for Writ of Habeas Corpus be DENIED and DISMISSED WITH PREJUDICE.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the parties may serve and file written objections with the Honorable Eugene P. Spellman, United States District Judge, within ten (10) days after being served with a copy of this Report and Recommendation. See *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982).

Respectfully Recommended in Chambers, at Miami, Florida, this 23 day of November, 1987.

---

**3.** In Florida, a trial judge's authority to override a life recommendation is severely limited. In *Tedder v. State,* 322 So.2d 908 (Fla.1975), the Florida Supreme Court considered an override to be appropriate only where the "facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." *Id.* at 910. This standard was upheld by the United States Supreme Court in *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).