[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14870

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 20, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:07-cv-00665-MMH-JBT

JAMES BELCHER,

Petitioner - Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 20, 2011)

Before CARNES, BARKETT and MARTIN, Circuit Judges.

PER CURIAM:

James Belcher, a Florida prisoner on death row, appeals from the district

court's denial of his petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. This court granted a certificate of appealability on three issues concerning Belcher's trial counsel's performance:

1. Whether Belcher's trial counsel was constitutionally ineffective for failing to object to prosecution statements in violation of Caldwell v. Mississippi, 472 U.S. 320 (1985).

2. Whether Belcher's trial counsel was constitutionally ineffective for failing to object to prosecution questions during the penalty phase aimed at proving a non-statutory aggravating circumstance—that prison life was not harsh—unrelated to the crime or the defendant.

3. Whether the combined effect of these instances of ineffectiveness cumulatively denied Belcher effective assistance of counsel.

After careful review of the record and the parties' arguments, and with the benefit of oral argument, we affirm.

## I. Procedural History

James Belcher was charged in Duval County, Florida, with first degree murder and sexual battery. The evidence at trial indicated that Belcher entered the victim's home, sexually assaulted her, and killed her by strangling and drowning her in the bathtub. The jury found Belcher guilty of first degree murder on the theories of both premeditation and felony murder, and guilty of sexual battery. After a penalty phase hearing, the jury voted, nine to three, in favor of a death sentence. The trial court followed the jury's recommendation and imposed a death

2

sentence for first-degree murder and sentenced Belcher to twenty-five years imprisonment for sexual battery. [1]  The Supreme Court of Florida affirmed Belcher's convictions and the death sentence on direct appeal.  Belcher v. State,

---

[1] The Florida Supreme Court on direct appeal summarized the findings at sentencing as follows:

> The trial court found that the State proved beyond a reasonable doubt the following aggravators in support of Belcher's death sentence: (1) the defendant has been previously convicted of a felony involving the use or threat of violence to some person (great weight); (2) the capital felony was committed while the defendant was engaged in the commission of the crime of sexual battery (great weight); and (3) the capital felony was especially heinous, atrocious, or cruel (HAC) (great weight).  The trial court found that all of the mitigating factors that were presented were proven sufficiently for the Court to give them consideration.  The mitigating factors in this case, all of which were nonstatutory, were: (1) in his relationship with family members, Belcher is considerate, generous and concerned; (2) Belcher loves his parents, brother, sisters, cousins, aunts, and uncles, and they love him; (3) Belcher has not lured anyone else in his family into trouble with the law, he has actually discouraged family members from engaging in criminal behavior and used himself as an example as to why they should not get involved in criminal activity; (4) Belcher has done many kind things for his family; (5) in spite of personal problems, Belcher has encouraged his cousins to do well; (6) Belcher has often been a mentor and a role model of integrity to his relatives; (7) Belcher has maintained contact with relatives even while in prison and continues to provide them advice and counsel, sometimes over the phone; (8) Belcher was raised in a high crime area in New York and was evidently unable to resist the temptations of crime; (9) Belcher was sent to adult prison at an early age and it affected his development; (10) Belcher has never abused alcohol or drugs; (11) Belcher has shown concern for younger inmates at Appalachee Correctional Institute (ACI) and has had a positive effect on their lives by being a tutor, basketball coach, a good listener, a counselor to young inmates, and a peacemaker; (12) Belcher can continue to help other inmates in the future, as evidenced by those who testified at the penalty phase; (13) Belcher has not been a discipline problem either in prison or in the pretrial detention facility for the period of his recent incarceration; (14) Belcher displayed proper behavior during trial; and (15) Belcher displayed appropriate remorse and genuine concern for the distress caused to his family and the victim's family during the Spencer hearing. The sentencing order indicates that the trial court assigned "some weight" to all of the mitigators, except for (11) and (12), to which it assigned "greater weight."

Belcher v. State, 851 So. 2d 678, 681-82 (Fla. 2003) (footnote omitted).

851 So. 2d 678 (Fla. 2003). Belcher's petition for writ of certiorari in the Supreme Court of the United States was denied. Belcher v. Florida, 540 U.S. 1054 (2003). Belcher then filed, in state court, a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.851. Belcher raised fourteen claims, nearly all of which concerned defense counsel's alleged ineffectiveness. The state trial court held an evidentiary hearing and subsequently denied the motion for post conviction relief. The Florida Supreme Court again affirmed and denied an additional state habeas petition filed by Belcher. Belcher v. State, 961 So. 2d 239 (Fla. 2007). The Supreme Court again denied certiorari. Belcher v. Florida, 552 U.S. 1026 (2007).

Belcher then filed the instant petition, which was also denied and from which he now appeals.

## II. Standard of Review and Legal Test

Belcher's habeas petition is governed by the standards of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. Because Becher's claim was adjudicated on the merits in his state post-conviction proceedings, § 2254(d) allows federal habeas relief only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d).[2]

Belcher's claims of ineffective assistance of counsel must be reviewed under the test set forth in Strickland v. Washington, 466 U.S. 668 (1984). "Strickland requires a petitioner to show both that his counsel's performance was deficient, and that the deficiency prejudiced his defense." Philmore v. McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009). Counsel's performance is deficient only if it "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. We will find prejudice only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694.

Thus, we will grant relief only if we find that the Florida Supreme Court's decision, affirming the trial court's denial of his ineffective assistance claims, was contrary to or an unreasonable application of U.S. Supreme Court law.

---

[2] A decision is "contrary to" federal law if it contradicts the Supreme Court on settled law or gives a different holding than the Court's on a set of materially indistinguishable facts—in short, it is a decision "substantially different from the [Supreme Court's] relevant precedent . . . ." Williams v. Taylor, 529 U.S. 362, 405 (2000). A decision unreasonably applies federal law if it identifies the correct governing legal principle as articulated by the United States Supreme Court but unreasonably applies that principle to the facts of the petitioner's case, "unreasonably extends [the] principle . . . to a new context where it should not apply, or unreasonably refuses to extend [it] to a new context where it should apply." Id. at 407.

5

### III.  Discussion

On appeal, Belcher argues that his trial counsel were constitutionally ineffective for two reasons.  We address each in turn.

*A.      Failure to Make Caldwell Objection*

First, Belcher asserts that trial counsel were ineffective for failing to object to the prosecutor's repeated references to the jury's sentence recommendation as advisory, which Belcher claims violates Caldwel1 v. Mississippi, 472 U.S. 320 (1985), and that the failure to object prejudiced him.

In Caldwell, the Supreme Court ruled in a partially divided opinion that the Eighth Amendment is violated when a jury is "led to believe that responsibility for determining the appropriateness of a death sentence rests not with the jury but with the appellate court which later reviews the case."  472 U.S. 320, 323. Caldwell involved a death sentence in Mississippi, where the jury had the sole responsibility for imposing the sentence and appellate courts reviewed the sentence with a "presumption of correctness."  See Id. at 331-32.  Because only four Justices joined part of the majority's analysis in Caldwell, the Court in Romano v. Oklahoma[3] adopted Justice O'Connor's Caldwell concurrence as

---

[3] 512 U.S. 1, 8-9 (1994).  The Romano court addressed the related question of whether admitting irrelevant evidence of a defendant's death sentence for another murder "impermissibly undermine[d] the sentencing jury's sense of responsibility for determining the appropriateness of the defendant's death."

limiting the case's reach:

> Caldwell [is] relevant only to certain types of comment—those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision.  Thus, [t]o establish a Caldwell violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law.

512 U.S. 1, 9 (1994) (citations and quotation marks omitted) (second alteration in Romano).

The capital sentencing scheme in Florida, unlike that in Mississippi and Oklahoma, treats the jury's verdict as advisory, albeit one carrying great weight that a judge can override only if "virtually no reasonable person could differ" as to the correct result.  Tedder v. State, 322 So. 2d 908, 910 (Fla. 1975).  In Davis v. Singletary, 119 F.3d 1471, 1482 (11th Cir. 1997), this Court applied Caldwell and Romano to Florida's sentencing scheme, noting that Romano required that the comments misstate the law on the jury's responsibility.  In Davis, the jury instructions and prosecutor's comments contained "references to and descriptions of the jury's sentencing verdict . . . as an advisory one, as a recommendation to the judge, and of the judge as the final sentencing authority."  Id.  We held that such comments "accurately characterize the jury's and judge's sentencing roles under Florida law" and so "are not error under Caldwell."  Id.  Thus, defense counsel here could have validly objected only if the prosecutor inaccurately stated the jury's

7

role in such a way that would "allow[] the jury to feel less responsible than it should for the sentencing decision." Romano, 512 U.S. at 9.

Having reviewed the record, we cannot say that the state misrepresented the law regarding the jury's role. The remarks made by the prosecutor, viewed in context, accurately portrayed the relationship between the judge and jury and did not denigrate the jury's role in the proceedings. Indeed, the prosecutor repeatedly stressed that the jury's recommendation held "great weight" in the judge's decision. Thus, counsel's performance in declining to object was not deficient, and we cannot say the Florida courts' denial of his ineffective assistance claim on this ground was contrary to or an unreasonable application of federal law.

B.    *Failure to Object to Non-Statutory Mitigator*

Belcher also alleges that counsel was deficient in failing to object when the government elicited testimony from Belcher's mitigation witnesses about prisoners' leisure activities, meals, and opportunities to work outside prison walls and on legal filings. Belcher had presented witnesses who described him as a man who coached a basketball team, tutored inmates seeking equivalency diplomas, mentored younger inmates to encourage them to avoid violence and disciplinary problems, and generally lived a life worth sparing. The trial court noted that this evidence of Belcher's life in prison and his future potential to be the most persuasive of the fifteen mitigating circumstances he found.

On cross-examination, the state sought at times to elicit a view of prison life as relatively pleasant. Defense counsel did not object and instead asked questions on re-direct to show that prison was in fact an unpleasant place in which people would not want to live. Belcher claims the decision not to object constituted ineffective assistance. Even assuming that Belcher's reliance on the evidence of his life in prison as a mitigator did not open the door to these questions on cross-examination, we cannot say that counsel's decision to address the issues on re-direct without objecting "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. One of Belcher's trial counsel at the post-conviction hearing testified that he decided as matter of strategy that it would be better not to object because he found the cross-examination "silly." As a result, he thought he could more effectively address the issues on redirect. For example, the prosecution elicited testimony on cross-examination of one witness about how some minimum-security inmates can work outside the prison walls supervised by a guard who has no gun. On re-direct, counsel clarified that some inmates' convictions, no matter how well behaved they may be in prison, prevent them from moving beyond "close custody" status—thus preventing them from ever working off the prison grounds or without an armed guard. Counsel similarly rebutted suggestions about the alleged desirability of the food served and circumstances in which prisoners receive visitors. To prove deficient performance, Belcher "must

9

overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. Belcher has not shown that the Florida Supreme Court's decision—that the presumption of "sound trial strategy" was not overcome—was contrary to or an unreasonable application of Supreme Court law.[4]

Accordingly, we find no reversible error and so affirm the district court's denial of Belcher's petition for habeas corpus.

**AFFIRMED**.

---

[4] Not having found deficient performance on either of Belcher's claims, we need not address his cumulative error argument.