# Supreme Court of Florida

_____

No. SC16-779
_____

**MATTHEW MARSHALL,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[May 4, 2017]

PER CURIAM.

Petitioner Matthew Marshall has filed a petition for writ of habeas corpus, challenging the constitutionality of his death sentence, which was based upon a judicial override. See Marshall v. State, 604 So. 2d 799, 802 (Fla. 1992). We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. Because Marshall's sentence became final before Ring v. Arizona, 536 U.S. 584 (2002), was decided, he is not entitled to relief. See Asay v. State, 210 So. 3d 1 (Fla. 2016). Accordingly, we deny the petition.

It is so ordered.

LEWIS, QUINCE, POLSTON, and LAWSON, JJ., concur.
CANADY, J., concurs in result.

LABARGA, C.J., dissents with an opinion, in which PARIENTE, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LABARGA, C.J., dissenting.

I dissent from the decision of the majority to deny Matthew Marshall habeas corpus relief. Although his sentence admittedly became final prior to the issuance of Ring, this Court has "the power to reconsider and correct erroneous rulings in exceptional circumstances and where reliance on the previous decision would result in manifest injustice, notwithstanding that such rulings have become the law of the case." State v. Owen, 696 So. 2d 715, 720 (Fla. 1997). Marshall's death sentence, which was based upon a judicial override, constitutes an injustice that should be remedied.

The standard for review of a judicial override was articulated in Tedder v. State, 322 So. 2d 908, 910 (Fla. 1975), abrogated by Hurst v. State, 202 So. 3d 40 (Fla. 2016):

> A jury recommendation under our . . . death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.

This elevated standard "honors the underlying principle that [the] jury's advisory sentence reflected the 'conscience of the community' at the time of . . . trial." Keen v. State, 775 So. 2d 263, 283 (Fla. 2000). The key focus under Tedder is

whether there exists a "reasonable basis in the record to support the jury's recommendation of life." San Martin v. State, 717 So. 2d 462, 471 (Fla. 1998). This is distinctly different from the weighing process that a trial court performs after a jury issues a recommendation of death. The recommendation of life "changes the analytical dynamic and magnifies the ultimate effect of mitigation on the defendant's sentence." Keen, 775 So. 2d at 285. For example, with respect to the life recommendation in Keen, this Court noted that "[w]hile any of us might or might not have come to the same conclusion . . . had we been jurors, that is not the legal standard by which we must evaluate the override of the jury's recommendation." Id. at 286 (emphasis added).

Marshall killed fellow inmate Jeffrey Henry at a correctional facility in Martin County. Marshall, 604 So. 2d at 802. Although the jury recommended life imprisonment, the trial court overrode that recommendation and imposed a sentence of death. Id. The court found four aggravating circumstances: (1) Marshall was under a sentence of imprisonment; (2) prior violent felony;[1] (3) the murder occurred while Marshall was engaged in the commission of, or an attempt to commit, a burglary;[2] and (4) the murder was especially heinous,

---

1. Marshall had a "record of violent felonies consisting of kidnapping, sexual battery, and seven armed robberies." Id. at 806.

2. According to the decision on direct appeal:

atrocious, or cruel.  Id. at 802.  In mitigation, the trial court found that Marshall

behaved acceptably during trial, and he entered prison at a young age.  Id.  The

court rejected as mitigation that Marshall's older brother led him astray to "run the

streets" and engage in illegal conduct, and his mother caused him to believe that

there would be no negative consequences for his behavior.  Id.  In overriding the

jury recommendation, the trial court cursorily stated:

> Sufficient aggravating circumstances exist as enumerated in
> section 921.141(5), and there are insufficient mitigating circumstances
> to outweigh the aggravating circumstances.  The facts supporting this
> conclusion are so clear and convincing that no reasonable person
> could differ.

On direct appeal, this Court affirmed Marshall's death sentence by a bare

majority vote.  Id. at 806.  Chief Justice Barkett, in a concurring in part and

---

> Marshall claimed that Henry was a "muscle man" for several inmates
> who operated a football pool.  When Marshall tried to collect his
> winnings from the inmates, they told him to get the money from
> Henry.  Marshall claims he entered Henry's cell only to collect his
> winnings but that Henry refused to pay, and that Henry then attacked
> him, so he fought back.

Id. at 802.  The Court later stated:

> [W]e find the circumstance of murder committed during the course of
> a burglary to have been proven beyond a reasonable doubt.  Even if
> Marshall initially entered Henry's cell with consent for the purpose of
> collecting a gambling debt, the only reasonable inference apparent
> from Marshall's reentering the cell was that he intended to resume his
> attack on the victim.

Id. at 805.

dissenting in part opinion that was joined by Justices Shaw and Kogan, concluded that a reasonable basis for the jury's recommendation of life existed, and the trial court abused its discretion when it overrode that recommendation:

> In addition to considering the stipulated testimony of Marshall's father, the jury could have reasonably viewed the evidence of the murder in a light more favorable to Marshall. In his closing argument to the jury, defense counsel conceded that the aggravating circumstances of murder committed while under a sentence of imprisonment and previous conviction of a violent felony were established, but strongly argued against the existence of the other aggravators presented by the State. He argued that the death penalty should be reserved only for the worst murderers and worst aggravation. He pointed out that the evidence showed that Marshall and Henry had no prior problems with each other and had socialized together at the prison. Defense counsel emphasized that the circumstances of the crime indicate no prior plot or plan to kill since Marshall entered the cell unarmed and the murder was committed with a battery pack belonging to and found within the cell of the victim. He argued that offensive wounds on Henry's hands showed that the murder occurred during the course of a fight and that Henry was a violent person. He also noted that Henry's skull was not fractured and his facial bones weren't broken, indicating that Marshall did not intend to torture the victim or inflict additional injuries once he was rendered unconscious. Defense counsel also pointed out that the murder was not committed for financial gain. Finally, defense counsel argued that Marshall's age and background mitigate the offense as well. He pointed out that a life sentence of 25 years on top of the sentence of 46 years that Marshall was already serving would keep Marshall in prison for a substantial period of time.
>
> . . .
>
> While the jury may not have believed that Marshall acted in self defense to excuse the killing, it could have reasonably inferred from the evidence that a fight erupted between Marshall and Henry and that Marshall killed Henry in a fit of rage. It is also likely that the jury rejected some of the aggravators found by the judge or assigned them minimal weight. Additionally, the jury could have reasonably found

mitigation in Marshall's family background and determined, based on the nature of the crime and the circumstances surrounding it, that the death penalty was not the appropriate penalty in this case.

Id. at 806-07 (citations omitted) (Barkett, C.J., concurring in part and dissenting in part).

I agree with Chief Justice Barkett's well-reasoned conclusion that under Tedder, it was an abuse of discretion for the trial court to override the jury recommendation. It cannot be said the facts of this case so clearly suggest a sentence of death "that virtually no reasonable person could differ." Tedder, 322 So. 2d at 910. The fact that three members of this Court dissented to the affirmance of the override demonstrates just the opposite is true.

I do not dispute that this was a violent murder. Matthew Marshall may be a violent person who deserves to be in prison for the rest of his life. However, in my opinion, the trial court failed to conduct the proper analysis under Tedder, and this Court failed to honor the "conscience of the community" when it affirmed the override in this case. Keen, 775 So. 2d at 283. The time has come to correct that erroneous ruling and afford Marshall what he is entitled to under the law—the sentence recommended by the jury who heard, considered, and carefully weighed the evidence presented.

Therefore, I dissent.

PARIENTE, J., concurs.

Original Proceeding – Habeas Corpus

Neal Andre Dupree, Capital Collateral Regional Counsel, and Todd G. Scher, Assistant Capital Collateral Regional Counsel, and Jessica Houston, Staff Attorney, Capital Collateral Regional Counsel, Southern Region, Fort Lauderdale, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Lisa-Marie Lerner, Assistant Attorney General, West Palm Beach, Florida,

for Respondent